DECISION ON OBJECTIONS TO THE MAGISTRATE'S DECISION
{¶ 1} Relator, William E. Sellards, Jr., has filed this original action in mandamus requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order which terminated his temporary total disability ("TTD") compensation as of December 18, 2002, on the grounds that relator had reached maximum medical improvement ("MMI"). Relator,
 {¶ 2} This court referred the matter to a magistrate, pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, who issued a decision containing findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate concluded that relator has not demonstrated that the commission abused its discretion in terminating his TTD compensation based upon a finding of MMI and that this court should deny relator's request for a writ of mandamus.
 {¶ 3} Relator has filed the following three objections to the decision of the magistrate:
1. The Magistrate erred in failing to find that the BWC [Bureau of Workers' Compensation] improperly refused to fill prescriptions necessary to treat Mr. Sellards' condition and in failing to find that the BWC's improper refusal to fill prescriptions interfered with Dr. Spare's ability to treat Mr. Sellards and rendered Dr. Levy's report invalid;
2. The Magistrate erred in failing to find that the evidence demonstrates that Mr. Sellards' condition was not at MMI. The Magistrate further erred in failing to find that the report of Dr. Levy is not valid evidence and does not support the Commission's decision to terminate temporary total [disability];
3. The Magistrate erred in finding that "the December 17, 2003 [sic] letter of Dr. Spare, submitted after the SHO hearing" should not be considered.
(Footnote omitted.)
 {¶ 4} The issue in this case is whether the commission abused its discretion in finding that claimant had reached MMI resulting in termination of TTD as of December 18, 2002.
 {¶ 5} Both at the magistrate level and in the objections to the magistrate's decision, relator cites three reasons why the commission abused its discretion in relying upon the report of Dr. Alan B. Levy in concluding that MMI had been reached on the date in question.
 {¶ 6} First, relator contends that the magistrate erred in failing to find that the Bureau of Workers' Compensation ("BWC") improperly refused to fill prescriptions necessary to treat relator's condition, which refusal interfered with Dr. J.T. Spare's ability to treat relator and, thus, rendered Dr. Levy's report invalid. In his report based upon an independent psychiatric examination on October 22, 2002, Dr. Levy determined that relator's depression had reached MMI. Dr. Levy had obtained a history from relator, conducted an examination, and reviewed the reports of Ronald Litvak, M.D., and Robert Kaplan, Ph.D., as well as the progress notes through July 22, 2002 of Dr. Spare, the treating physician. This information indicated some improvement in relator's "mood once compensation began but residual depression continuing." Dr. Spare noted that relator had experienced "no further improvements over the past three months." He concluded by rendering the opinion that relator "continues to experience residual symptoms of Major Depression" and renders him permanently disabled and concludes that relator "has reached MMI" although he likely "will need indefinite care from a psychiatrist and therapist." Dr. Spare countered Dr. Levy's report with a letter dated November 26, 2002, that explains relator's depressive symptoms "vary a bit from week to week and, at times, appear to vary independently of the situation and at times seem to be a pretty direct result of intercurrent stress." Dr. Spare further stated that his treatment of relator had "been, to some extent, limited on the options available" and that he had used "office samples in an attempt to treat him but, unfortunately, many of the things that I would otherwise use are not available." He further opined that "with optimizing and medication and continued psychotherapy, [relator] can make additional progress." Dr. Spare concluded that "[o]bviously if [relator's] situational problems, things over which he has no control * * * are stabilized, it will be easier to work with him but those things are not always controllable."
 {¶ 7} Relator apparently had trouble filling Dr. Spare's prescriptions because the bureau declined payment; however, relator did not inform the bureau of this problem until December 24, 2002, when, in response to a telephone call from his attorney the day before, a 1999 stop on prescriptions for relator's physical injuries was corrected and limited to "narcotic medication" so that all "other medications that are related to the allowed conditions of this claim" could be paid. In a letter dated February 17, 2003 (the January 7, 2003 date given by the magistrate is incorrect and is corrected here), Dr. Spare indicated that relator continued to be symptomatic and that his attempts to get his prescriptions filled have been frustrated by the pharmacist who claimed that the medications are not compensated. Further, Dr. Spare indicated as follows:
* * * Mr. Sellards likely would have some opportunity to benefit from alternative medication or augmentation with a mood stabilizer; however, these approaches would require closer monitoring, blood testing and the availability of medication on a continuous basis. Given the uncertainty of the situation, I have been a bit reluctant to proceed with that because there are some risks involved, particularly if the medication cannot be continuously monitored appropriately.
Additionally, some consideration might be given to having Mr. Sellards participate in a therapy group which involves other individuals who have disability. I have found this particular approach to be quite useful for some other similarly effected individuals. There are * * * several treatment options which might provide further benefit and continued improvement. This is a relatively young man and I would be reluctant to assume that he could get no better. Certainly, more aggressive treatment appears to be warranted prior to concluding that he will make no substantial improvement.
 {¶ 8} Even if we considered Dr. Spare's February 17, 2003 opinion, which was just discussed, we do not find the commission's February 6, 2003 order to be improper because Dr. Spare's February 17th opinion was before the commission. Furthermore, it does not render Dr. Levy's report and conclusions invalid or unreliable. Dr. Spare's suggestions, conclusions, and hopeful improvement in relator's psychiatric condition is largely speculative and states reservations as well as doubts about the future progress of relator. Relator's first objection is overruled.
 {¶ 9} Closely related is relator's second objection that asserts Dr. Levy's MMI report should be excluded as evidence because Dr. Levy had not been informed of the problem with prescriptions. Once again, this objection is based upon an overstatement of Dr. Spare's opinion which indicated his treatment options were to "some extent limited" and partly alleviated by Dr. Spare's generous "use of office samples." Had Dr. Spare's concern been great, it would seem that the objections for alleviating the problem would have been approached earlier. It is further noted that relator's medication had been the same for the past nine months and that his depression had been treated for over a year before MMI was found. Dr. Spare's report gives little insight into why he believes "with optimizing and medications and continued psychotherapy, [relator] can make additional progress."
 {¶ 10} Relator's second objection is overruled.
 {¶ 11} In his third objection, relator contends that the magistrate erred in pointing to the "December 17, 2003 letter of Dr. Spare" which was dated February 17, 2003, and submitted after the staff hearing officer's ("SHO") hearing, but prior to the commission's decision to refuse relator's request for reconsideration. It is true that Dr. Spare's final reports were dated February 17, 2003, and that they contained a visible file stamp of March 21, 2003. The magistrate was in error in referring to the dates as December 17, 2003; however, these reports were filed after the SHO's order from which this mandamus action arises and relator does not contest the commission's refusal of his request for reconsideration. Hence, there is no basis to sustain this objection since the commission can only act upon information which it receives before an order is issued. The order in question was refused by order of the commission mailed March 7, 2003, which preceded the receipt of Dr. Spare's February 17, 2003 letters. It is not an abuse of discretion for the commission to rely on matters which it has before it at the time an order is issued.
 {¶ 12} Relator's third objection to the magistrate's decision is overruled with the exception that the decision is corrected to reflect the proper date of Dr. Spare's last two letters that was February 17, 2003.
 {¶ 13} Following an independent review, pursuant to Civ.R. 53, and for the reasons expressed in the magistrate's decision and in this decision, we find that the magistrate has correctly determined the pertinent facts (except for the date of Dr. Spare's latest reports) and applied the pertinent law to them. Accordingly, we overrule relator's objections and adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained in it. In accordance with the magistrate's decision, the requested writ of mandamus is denied.
Objections overruled; writ of mandamus denied.
Brown and Klatt, JJ., concur.
McCormac, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. : William E. Sellards, Jr., : Relator, : v. : No. 03AP-987 The Industrial Commission of Ohio: (REGULAR CALENDAR) and Ideal Electric Co., : Respondents. :
 MAGISTRATE'S DECISION Rendered on February 20, 2004 Stewart Jaffy Associates Co., LPA, Stewart R. Jaffy andMarc J. Jaffy, for relator.
Jim Petro, Attorney General, and Stephen D. Plymale, for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 14} Relator, William E. Sellards, Jr., has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which terminated his temporary total disability ("TTD") compensation as of December 18, 2002, on the grounds that relator had reached maximum medical improvement ("MMI").
Findings of Fact:
 {¶ 15} 1. Relator sustained a work-related injury on July 13, 1998, and his claim was originally allowed for: "sprain lumbar region, herniated disc L5-S1." Relator received TTD compensation, based upon the allowed physical conditions, through December 13, 2000, when it was determined that his physical conditions had reached MMI.
 {¶ 16} 2. By order dated July 17, 2002, relator's claim was additionally allowed for: "major depressive disorder, single episode," and TTD compensation was awarded pursuant to the C-84 and office notes of Dr. J.T. Spare.
 {¶ 17} 3. With regard to his allowed psychological condition, relator began treating with Dr. Spare in November 2001. According to Dr. Spare's letter dated February 17, 2003, Dr. Spare immediately started relator on anti-depressant medication and supportive psychotherapy in November 2001. Dr. Spare provided relator with office samples of several anti-depressants but stated that they were "incompletely effective." Dr. Spare noted that:
* * * [A]ugmentation strategies which involve the prescription of mood stabilizers or small doses of major tranquilizers or more typical antidepressants are often prescribed. Some of these strategies require medication which is not available as samples as well as blood monitoring which is also expensive. As a consequence, our attempts at treatment were limited and Mr. Sellards has not had all of the available aggressive treatments for his depression.
 {¶ 18} 4. The above letter of Dr. Spare had been written in response to the October 22, 2002 independent psychiatric evaluation prepared by Dr. Alan B. Levy. Dr. Levy reviewed Dr. Spare's progress notes from November 2001 on and noted as follows:
I reviewed several of Dr. Spare's progress notes since that date indicating persisting depression and medication changes including trials of Remeron and eventually Effexor. The Effexor was initially prescribed on December 10, 2001, and Bill has been on that medication ever since. He is currently taking 225 mg. a day. In addition, Dr. Spare started Bill on Seroquel on March 18, 2002, and Bill has remained on that medication since that time. He currently takes between 25 and 100 [illegible] as needed for sleep and anxiety.
 {¶ 19} Dr. Levy noted that relator began treatment with Dr. Spare in November 2001 and yet relator's claim was not additionally allowed for a psychiatric condition until July 2002 and that the delay had been stressful for relator. Dr. Levy noted that the progress notes from relator's counselor and the progress notes from Dr. Spare indicate some improvement in relator's mood once compensation began but that his residual depression continued. In conclusion, Dr. Levy stated as follows:
When starting counseling and medication treatment for his depression, he noticed an improvement in the way he felt. In the past six months, his mood has generally been fairly consistent, though his depression, anxiety, and irritability persist. The intensity of these symptoms is less severe than they were prior to starting treatment. Three months ago when BWC agreed to compensate him for temporary total disability, he noticed a further improvement in his mood; however, over the past three months after the initial jump in improvement noted in July, there has not been further improvement. * * *
Bill continues to experience residual symptoms of Major Depression. There has been some improvement since he began medication treatment and more substantial improvement since he was awarded compensation for temporary total disability. He, nonetheless, continues to experience sufficient depression symptoms to render him disabled, and I believe this disability to be permanent. I believe he has reached MMI. He is unlikely to show any further improvement in his condition. * * * It is unlikely that he will experience any significant further improvement in his depression so [he] is at MMI and is permanently disabled. It would be useful for him to continue to receive counseling and medication management at a frequency of once every month for the next three to four months then decrease the frequency of these visits to every couple of months. It is likely that he will need indefinite care from a psychiatrist and therapist.
 {¶ 20} 5. Dr. Spare supplied three letters in response to Dr. Levy's report. Dr. Spare emphasized that the reason that he has not been able to change relator's course of treatment is because relator has been having difficulties getting the medications paid for and he cannot afford them himself. Dr. Spare did indicate that he continues to provide relator with office samples; however, he does not have samples of all the medications he would like to try with relator.
 {¶ 21} 6. On December 18, 2002, a district hearing officer ("DHO") heard a motion filed by the Ohio Bureau Workers' Compensation ("bureau") regarding whether relator's TTD should be terminated. The DHO determined that TTD compensation should be terminated based upon a finding of MMI and noted as follows:
The District Hearing Officer finds that the claimant has reached maximum medical improvement. Maximum medical improvement is defined as a treatment plateau, static or wellstabilized, at which no fundamental, functional or physiological change can be expected within reasonable medical probability in spite of continuing medical or rehabilitative procedures. (Ohio Administrator Code Section 4121-3-32.)
The District Hearing Officer finds the 10/22/2002 medical report of Dr. Levy to be persuasive in its opinion that the injured worker has reached maximum medical improvement for the allowed psychological condition of major depressive disorder in this 07/13/1998 work place injury claim.
 {¶ 22} 7. Relator appealed the matter and submitted the January 7, 2003 report of Dr. Spare indicating that relator continues to be symptomatic, and that his attempts to get his prescriptions filled have been frustrated by the pharmacist who claims that the medications are not compensated. Further, Dr. Spare indicated as follows:
* * * Mr. Sellards likely would have some opportunity to benefit from alternative medication or augmentation with a mood stabilizer; however, these approaches would require closer monitoring, blood testing and the availability of medication on a continuous basis. Given the uncertainty of the situation, I have been a bit reluctant to proceed with that because there are some risks involved, particularly if the medication cannot be continuously monitored appropriately.
Additionally, some consideration might be given to having Mr. Sellards participate in a therapy group which involves other individuals who have disability. I have found this particular approach to be quite useful for some other similarly effected individuals. There are some several treatment options which might provide further benefit and continued improvement. This is a relatively young man and I would be reluctant to assume that he could get no better. Certainly, more aggressive treatment appears to be warranted prior to concluding that he will make no substantial improvement.
 {¶ 23} 8. The matter was heard before a staff hearing officer ("SHO") on February 6, 2003, and resulted in an order affirming the prior DHO order as follows:
The BWC letter dated 11/14/2002 remains granted to the extent of this order. The Staff Hearing Officer affirms the finding that the claimant's allowed psychological condition has reached maximum medical improvement. The allowed physical conditions were previously found to have reached maximum medical improvement per Staff Hearing Officer order dated 1/22/2001. The Staff Hearing Officer relies on the 10/22/2002 report of Dr. Levy who opined that the claimant's psychological condition has reached maximum medical improvement. As such, temporary total compensation was properly terminated effective 12/18/2002, the date of the District Hearing Officer hearing at which the initial determination of maximum medical improvement was made. Although Dr. Levy does indicate that counseling and medication management should continue, he indicates it is unlikely that the claimant will experience any further improvement in his psychological condition despite that treatment. The Staff Hearing Officer further finds that although the psychological condition was not formally recognized in this claim as an allowed condition until July of 2002, the claimant has been receiving regular treatment with Dr. Spare since at least November of 2001. Although the claimant just recently reported a problem to the BWC in getting his prescriptions filled, it is noted that Dr. Spare has been providing the claimant with free medication samples to treat the allowed psychological condition.
 {¶ 24} 9. Relator's further appeal was refused by order of the commission mailed March 7, 2003, and his request for reconsideration was denied by order mailed April 26, 2003.
 {¶ 25} 10. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 26} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. Stateex rel. Pressley v. Indus. Comm. (1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record.State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewisv. Diamond Foundry Co. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder.State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 27} TTD compensation awarded pursuant to R.C. 4123.56 has been defined as compensation for wages lost where a claimant's injury prevents a return to the former position of employment. Upon that predicate, TTD compensation is payable to a claimant until one of four things occurs: (1) claimant has returned to work; (2) claimant's treating physician has made a written statement that the claimant is able to return to their former position of employment; (3) that temporary disability has become permanent and the employee has reached MMI; or (4) work within the physical capabilities of the claimant has been made available.
 {¶ 28} In the present case, the question is whether the evidence relied upon by the commission in finding that relator had reached MMI constitutes "some evidence" upon which the commission properly relied. For the reasons that follow, this magistrate finds that the commission did not abuse its discretion.
 {¶ 29} Relator makes two arguments in support of his mandamus action: (1) his treating physician, Dr. Spare, specifically stated that with optimizing medication and continued psychotherapy, relator can make additional progress. Relator contends that it was an abuse of discretion for the commission not to rely upon this evidence. However, in State ex rel. Bellv. Indus. Comm. (1995), 72 Ohio St.3d 575, the Ohio Supreme Court rejected the assertion that a treating physician's report is entitled to enhance weight. Instead, pursuant to State exrel. Burley v. Coil Packing, Inc. (1987), 31 Ohio St.3d 18, the commission has the exclusive authority to evaluate evidentiary weight and credibility. As such, unless Dr. Levy's report, in and of itself, cannot constitute some evidence upon which the commission could rightfully rely, relator's argument fails.
 {¶ 30} In arguing that Dr. Levy's report does not constitute "some evidence" upon which the commission could rely, relator argues that Dr. Levy did not appreciate the fact that Dr. Spare had been forced to select the course of treatment he selected for relator because of the delay in allowing the psychological condition and because relator had numerous difficulties filling his prescriptions because the prescriptions were not getting paid for. Relator specifically points to the December 24, 2002 letter from the bureau indicating that, in response to a phone call on December 23, 2002 regarding his prescriptions not being paid, the bureau noted that it was only the narcotic medication that should have been denied payment and not the rest of his medications. As such, the letter indicates that, in the future, all other medications that are related to the allowed conditions should be paid.
 {¶ 31} Relator made the above argument to the commission and the SHO rejected it. In fact, in the February 6, 2003 order, the SHO noted that relator had recently reported a problem getting his prescriptions filled but that Dr. Spare had been providing relator with free medication samples to treat his allowed psychological condition. The commission weighed the evidence before it and found the repot of Dr. Levy to be credible and that letter supported the finding that relator had reached MMI. Although relator argues that both Dr. Levy and the commission have failed to understand Dr. Spare's opinion that relator's psychological condition will improve if he is treated in the manner that Dr. Spare recommends, the commission determined otherwise and this magistrate cannot say that that decision constitutes an abuse of discretion. Instead, the commission weighed the evidence before it and found the report of Dr. Levy to be credible. The fact that Dr. Spare had a different opinion is immaterial.
 {¶ 32} Relator also points out that Dr. Spare's treatment plan dated October 17, 2002, recommending psychotherapy with medication management twice a month for six months was not granted by the bureau until October 22, 2002, and asserts therefore that relator had not been given an opportunity to improve and that Dr. Levy was unaware of the treatment plan. However, this magistrate notes that Dr. Levy specifically indicated in his report that relator would require continued medication and psychotherapy. As such, it was not an abuse of discretion for the commission to find that relator had reached MMI in spite of the fact that the bureau had approved a treatment plan for relator. Furthermore, once Dr. Spare's treatment plan was authorized (October 22, 2002), and once relator was able to get all of his prescriptions filled (December 24, 2002), this is no evidence that Dr. Spare proceeded treating relator in the manner in which he stated would be most effective. Although Dr. Spare indicated that relator had not reached MMI, Dr. Levy noted otherwise based upon the treatment relator had been provided. Because this argument was presented to the commission, and because the commission assessed credibility and weighed the evidence, this magistrate does not find an abuse of discretion.
 {¶ 33} Lastly, relator points to the December 17, 2003 letter of Dr. Spare, submitted after the SHO hearing, and argues that this court should consider this evidence pursuant to State exrel. Bowman v. Indus. Comm. (Nov. 14, 2002), Franklin App. No. 02AP-284. However, in Bowman, this court considered an affidavit submitted after the SHO hearing when the SHO's determination was based upon an assumption made which could have been addressed by the parties if the SHO would have asked. However, in the present case, Dr. Spare's letter is neither an affidavit nor did the commission make a determination on an issue for which there was no evidence. As such, Bowman would not apply.
 {¶ 34} Based on the foregoing, it is this magistrate's decision that relator has not demonstrated that the commission abused its discretion in terminating his TTD compensation based upon a finding of MMI and this court should deny relator's request for a writ of mandamus.
 /s/ Stephanie Bisca Brooks
STEPHANIE BISCA BROOKS MAGISTRATE